UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GABRIEL BUSA,<br><br>        Plaintiff,<br><br>  v.<br><br>TOWNSHIP OF GLOUCESTER, MAYOR AND COUNCIL OF THE TOWNSHIP OF GLOUCESTER, and DAVID MAYER,<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 10-1396<br>(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

MARK CIMINO, ESQUIRE
1045 Cooper Street
Deptford, NJ 08096
    Counsel for Plaintiff

ARCHER & GREINER, P.C.
By:  Vincent P. Sarubbi, Esq.
     Brian C. Pickard, Esq.
One Centennial Square
Haddonfield, NJ 08033
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff Gabriel Busa initiated this action against the Township of Gloucester (the "Township"), its Mayor and Council and Mayor David Mayer personally (collectively "Defendants"), alleging that he was wrongfully terminated from his position as Director of Public Works for political reasons.[1]  Pending before

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

the Court is Defendants' Motion for Summary Judgment.

## I.

Plaintiff was appointed Director of Public Works for the Township in 1992.[2]  (Defs' 56.1 Stat. ¶ 4.)[3]  At this time, the Township was controlled by the Democratic party.  (Pl's Stat. of Facts ¶ 5.)  According to Plaintiff, prior to 2006 he was active in the Democratic party and participated in events and campaigns.  (*Id.* ¶ 6.)  In 2006, Cindy Rau-Hatton, a member of the Republican party, was elected mayor.  (Defs' 56.1 Stat. ¶ 9; Pl's Stat. ¶ 7.)  She asked Plaintiff to continue in his position as Director of Public Works.[4]  (Defs' 56.1 Stat. ¶ 9.)

In 2009, Democrat David Mayer was elected mayor of the

---

[2]  The Township of Gloucester has adopted the Mayor-Council form of government under the Optional Municipal Charters Law, N.J.S.A. § 40:69A-1 *et seq*, known as the Faulkner Act.  Under the Township's Mayor-Council form of government, the executive power of the Township is exercised by the Mayor, and each department head, including the Director of Public Works, is "appointed by the mayor with the advice and consent of the council."  *Id.* § 40:69A-43(b).  Consistent with this statute, Article VIII, § 8.1 of the Township's Organizational Ordinance of 1982 provides: "The head of the Department of Public Works shall be the Director of Public Works.  He shall be appointed by the Mayor with the advice and consent of Council until appointment and qualification of a successor."  (Defs' 56.1 Stat. ¶ 3, Carlamere Cert. Ex. A.)

[3]  References to "Defs' 56.1 Stat." are to Defendants' statement of undisputed material facts submitted in support of their Motion.

[4]  Although the parties agree that Plaintiff remained in the position as a holdover employee because the council did not consent to Plaintiff's continued employment, they dispute whether Mayor Rau-Hatton sought the consent of the council.  (Defs' 56.1 Stat. ¶ 10; Pl's Resp. to Defs' 56.1 Stat. ¶ 10.)

Township for a term commencing on January 1, 2010.  (*Id.* ¶ 12.) In a December 21, 2009 letter, Plaintiff was informed that Mayer would not reappoint him as Director of Public Works and that his employment would conclude on December 31, 2009.  (*Id.* ¶ 13.) Mayer instead appointed Len Moffa, an active participant in the Democratic party.  (Pl's Stat. of Facts ¶¶ 21-22.)  Plaintiff alleges that he was removed from his position because Defendants perceived him to be a member of either the Republican party or a different faction of the Democratic party.  (Compl. Count One ¶¶ 12-13.)

Following the end of Plaintiff's employment, the Township paid Plaintiff $27,993.60 for 80 unused vacation days pursuant to Section 5 of Township Ordinance O-89-38.  (*Id.* ¶¶ 15, 18.) However, Plaintiff claims that he was not compensated for 80 unused sick days.  (Pl's Stat. of Facts ¶ 23.)

On February 17, 2010, Plaintiff filed a six count Complaint in this Court alleging constitutional violations stemming from Defendants' allegedly improper termination of his employment for political reasons and their failure to compensate him for unused sick time.  Defendants moved for summary judgment on February 17, 2011.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

In addition to a claim for political discrimination, Plaintiff asserts due process violations under the federal and state constitutions for improper termination and failure to pay compensation due to him.[5]

---

[5] Plaintiff brings his federal constitutional claims pursuant to 42 U.S.C. § 1983, which provides:
    Every person who, under color of any statute,

4

Defendants move for summary judgment on all counts. The Court will first consider Plaintiff's due process claims for improper termination before turning to his claim that he was denied compensation for unused sick time and his claim of political discrimination.

### A.

Plaintiff brings four claims of due process violations based on Defendants' failure to reappoint him as Director of Public Works. Count Two alleges that Plaintiff was improperly terminated; Count Three alleges that he had tenure and was

---

> ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Plaintiff presumably brings his state constitutional claims pursuant to the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, although he does not mention it in his Complaint. The New Jersey Civil Rights Act is an analog to 42 U.S.C. § 1983 and provides a private cause of action to a person who

> has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6-2(c).

5

terminated without a hearing; Count Four alleges that his public works manager certificate was not revoked prior to his termination; and Count Five alleges that his termination violated Township policies providing for removal for cause only.  (*See* Compl. Counts 2-5.)

In order to maintain a due process claim for the termination of an employment position, a plaintiff must first establish a property interest in the employment.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Latessa v. New Jersey Racing Com'n*, 113 F.3d 1313, 1318 (3d Cir. 1997).  Plaintiff asserts that he had a property interest in the Director of Public Works position based on Gloucester Township Code § 5-4(M)(b), providing that unclassified employees, which allegedly includes Plaintiff, may only be terminated for cause.

The Court finds that the Faulkner Act, *see supra* note 2, not Gloucester Township Code § 5-4(M)(b), controls the result in the instant case.  Pursuant to the Faulkner Act, an incoming mayor appoints department heads who serve during the term of the appointing mayor.  *See* N.J.S.A. § 40:69A-43(b)("Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council.  Each department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor.").  While department heads can only expect to

serve during the term of their appointing mayor, *see Mele v. Fahy*, 579 F.Supp. 1576, 1580 (D.N.J. 1984), a "superintendent of public works" may acquire tenure, but only if "the governing body of the municipality shall first pass an ordinance authorizing the tenure of the office."  *See* N.J.S.A. § 40A:9-154.6.

Here, it is undisputed that the Township did not pass an ordinance authorizing tenure for the Director of Public Works pursuant to N.J.S.A. § 40A:9-154.6.  Absent such an ordinance, Plaintiff was not entitled to tenure regardless of the number of years that he held the position.  While Gloucester Township Code § 5-4(M)(b) provides for termination for cause, this general ordinance applying to "unclassified employees" does not alter the more specific statutory directives that plainly apply directly to a municipal superintendent of public works.[6]

Therefore, Plaintiff lacked a property interest in his reappointment as Director of Public Works.[7]  *Cf. McKeever v. Township of Washington*, 236 F.Supp. 2d 400, 405 (D.N.J 2002)(holding that public works director had property interest in position where township had passed ordinance granting tenure to a

---

[6] In addition, the Court finds no basis on which to construe § 5-4(M)(b) as granting tenure to the Director of Public Works pursuant to N.J.S.A. § 40A:9-154.6, nor has Plaintiff so argued.

[7] Because Plaintiff lacks a property interest in his reappointment, there is no need for the Court to undertake a separate analysis of Plaintiff's claims for violations of the New Jersey Constitution.

person holding the position for five or more years).[8] Accordingly, summary judgment is granted to Defendants on Counts Two, Three and Five of Plaintiff's Complaint.[9]

**B.**

In Count Six, Plaintiff claims that Defendants failed to compensate him for unused sick time, in violation of his state and federal due process rights, and the New Jersey Wage Payment Act, N.J.S.A. § 34:11-4.1, *et seq*.[10] (*See* Compl. ¶¶ 3-5, 8.) Although the parties agree that Gloucester Township Ordinance O-

---

[8] While the Faulkner Act does provide for notice and a hearing prior to removal of a department head, this only applies where the appointing mayor is also the one seeking to dismiss the department head from office. *See* N.J.S.A. § 40:69A-43(c); *Mele v. Fahy*, 579 F.Supp. 1576, 1580 (D.N.J. 1984). Plaintiff was not dismissed from office by any of the appointing mayors; therefore, the due process protections in § 40:69A-43(c) are inapplicable here.

[9] In Count Four, Plaintiff asserts a due process claim based on the fact that Defendants did not revoke his public works manager certificate before terminating him. (*See* Compl. Count Four.) N.J.S.A. § 40A:9-154.6f outlines the procedures for revoking a public works manager certificate, but nothing in the statute requires that revocation occur prior to termination. Furthermore, the Court finds no basis from which to conclude that possession of such a certificate creates a property interest in the Director of Public Works position. Accordingly, summary judgment is granted to Defendants on Count Four of Plaintiff's Complaint.

[10] Plaintiff also alleges that Defendants' failure to pay him for accumulated sick time is in breach of a contract. However, it is undisputed that Plaintiff never had an employment contract covering the terms and conditions of his employment as Director of Public Works. (*See* Defs' 56.1 Stat. ¶ 6; Pl's Resp. ¶ 6.) Therefore, Plaintiff's claim that the alleged failure to pay accumulated sick time constitutes a breach of contract is entirely without merit.

89-38 ("the Ordinance") governs the compensation to which Plaintiff is entitled, they disagree about which paragraph controls.

Regarding the payment of accumulated sick time, the Ordinance distinguishes between officers and employees hired before February 1, 1988, who are entitled to the payment of 80 unused sick days, and those hired after that date, who are not entitled to compensation for unused sick time. (*See* Fleming Aff. Ex. B.) Plaintiff argues that although he was not appointed Director of Public Works until 1992, his service to the Township as a councilman prior to February 1, 1988 entitles him to the payment of sick time under the Ordinance. (Pl's Opp. Br. at 28-29.) Defendants argue that Plaintiff did not obtain a position entitling him to the accumulation of sick time until after February 1, 1988. (Defs' Reply at 8.)

The Court agrees with Defendants that Plaintiff's service to the Township prior to February 1, 1988 as a councilman does not entitle him to payment for unused sick time under the Ordinance. Prior to February 1, 1988, Plaintiff was an elected official and not entitled to either the accumulation of sick time or payment for unused time. (*See* Fleming Aff., Ex. B, Section 4.) Plaintiff did not obtain a position as a department head, entitling him to the accumulation of sick time, until after February 1, 1988. Therefore, paragraph E dictates that

9

Plaintiff, as a Director hired after February 1, 1988, is not entitled to compensation for unused sick time. (*Id.* Section 5, ¶ E.)

Accordingly, summary judgment is granted to Defendants on Count Six of Plaintiff's Complaint.

C.

In Count One of his Complaint, Plaintiff asserts that he was terminated from his position as Director of Public Works "because he did not politically support the Democrat Party faction in power, nor did he help the election campaigns of the Democrat Party faction in power, and he was perceived to be affiliated with the former Republican Administration." (Compl. Count One ¶ 18.) Plaintiff alleges that Defendants' actions violated the First and Fourteenth Amendments of the United States Constitution and Article 1 of the New Jersey Constitution.[11] (*Id.* ¶ 19.)

---

[11] Defendants argue that Plaintiff's claim based on the New Jersey Constitution fails as a matter of law based on a recent District of New Jersey case holding that the New Jersey Civil Rights Act ("NJCRA") does not "establish a cause of action for political discrimination...." *McKeever v. Township of Washington*, 2011 WL 53178, at *4 n.5 (D.N.J. Jan. 7, 2011). However, as explained in that same opinion, the NJCRA "operates as an analog to 42 U.S.C. § 1983, and creates a cause of action under state law for violations of the New Jersey Constitution." *Id.* Since the prohibition against political discrimination stems from the constitutional protections of freedom of speech, *see Elrod*, 427 U.S. at 355-60, which are also embodied in Article 1 of the New Jersey Constitution, the NJCRA properly provides a means to redress alleged political discrimination. *See In the Matter of Anthony F. Puglisi*, 186 N.J. 529, 531 (2006); *Mineer v. Sheriff James McGettigan*, 2008 WL 2744376, at *7 (N.J. Super. App. Div. July 16, 2008)(concluding that plaintiff had a right to

In *Elrod v. Burns*, the United States Supreme Court held that terminating certain public employees based solely upon political affiliation infringes upon the First Amendment rights of association and belief.  427 U.S. 347, 372-73 (1976).  Thus, a public employee who does not hold a policymaking or confidential position cannot be discharged solely on the basis of his political beliefs.  *Id.* at 375 (Stewart, J., concurring).  "On the other hand, party affiliation may be an acceptable requirement 'if an employee's private political beliefs would interfere with the discharge of his public duties.'"  *Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir. 1991) (citing *Branti v. Finkel*, 445 U.S. 507, 517 (1980)).  Such would be the case for an employee who "acts as an adviser or formulates plans for the implementation of broad goals."  *Elrod*, 427 U.S. at 367-68.

"[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Branti*, 445 U.S. at 518.  "[S]hould a difference in party affiliation be highly likely to cause an official to be

---

"refrain[] from engaging in political activities" as protected by Article 1, paragraph 6 of the New Jersey Constitution).

11

ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment." *Zold*, 935 F.2d at 635 (quoting *Ness v. Marshall*, 660 F.2d 517, 521 (3d Cir. 1981)).

From these general principles, a three-pronged test for political discrimination has emerged. To make out a *prima facie* case of political discrimination, a plaintiff must show that (1) he was employed at a public agency in a position that does not require political affiliation, (2) that he was engaged in constitutionally protected conduct, and (3) that this conduct was a substantial or motivating factor in the government's employment decision. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). With respect to prong one, an employee must demonstrate that he was employed by a public entity, but "the employer bears the burden of proving that the position is one for which party affiliation is an appropriate requirement, should it choose to raise the issue." *Robertson v. Fiore*, 62 F.3d 596, 599 n.2 (3d Cir. 1995).

Defendants move for summary judgment, arguing that Plaintiff cannot establish any of the required elements of the *prima facie* case. (*See* Defs' Br. In Support at 11.) In particular, Defendants contend that the Director of Public Works requires a political affiliation because "[i]t is a policymaking position that wields a great deal of influence over the Township's public

12

works decisionmaking." (*Id.* at 14.)

In determining whether political affiliation may be the basis for dismissal of a position, the Third Circuit instructs that the functions of the office must be examined, including such factors as "whether the employee has duties that are non-discretionary or non-technical, participates in discussions or other meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policymakers." *Galli,* 490 F.3d at 271. "The key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility, but whether she has meaningful input into decisionmaking concerning the nature and scope of a major program." *Id.*

In *McKeever v. Township of Washington*, the court found that the position of Director of Public Works in Washington Township did not require political affiliation. 236 F.Supp. 2d 400, 411 (D.N.J. 2002). The court's holding was largely based on the fact that Washington Township passed a tenure ordinance pursuant to N.J.S.A. § 40A:0-154.6, granting protection from political removal for the position. *Id.* In further support of its holding, the Court also noted that the statutory requirement of certification for the position evidenced a legislative intent to professionalize it. *Id.*

The New Jersey Civil Service Commission states that the

Director of Public Works "plans, organizes, and directs the programs and activities of a comprehensive public works department...." (Fleming Aff. Ex. A.)  According to the Township organizational ordinance, the Director of Public Works is the head of the division of streets, sanitation, and parks and playgrounds, which, according to Plaintiff, include approximately 85,000 employees.  (Carlamere Cert. Ex. A at 8.1; Sarubbi Cert. Ex. B at 48:10-11.)  The Director is "responsible for the proper and efficient conduct of all public works functions of the Township government and shall supervise and direct the work that the Public Works Department performs."  (*Id.*)  In addition, the Director submits requests for appropriations to the mayor in accordance with N.J.S.A. § 40:69A-45.

Based on these responsibilities, it appears that the Director of Public Works plays a meaningful role in decisionmaking for what is a major Township program.  The Director has discretionary duties and acts as an advisor to the mayor on public works policy.  (*See* Sarubbi Cert. Ex. B at 50:22-24.)  Moreover, as discussed *supra*, the Township here did not pass a tenure ordinance for the Director of Public Works position.  Thus, the Township has decided not to grant protection from political removal for this position, and, pursuant to the Faulkner Act, the incoming mayor may appoint a Director of his choosing.  *See supra* section III, A.  While the statutory

requirement of certification may suggest a legislative intent to professionalize the position, this alone is not sufficient to support a finding that the position was intended to be de-politicized in a municipality that has not passed a tenure ordinance for the position.

Therefore, Plaintiff's *prima facie* case fails as a matter of law, as the Court finds that Defendants have met their burden of demonstrating that the Director of Public Works in the Township is one properly subject to dismissal on the basis of party affiliation.  Accordingly, Defendants' Motion for Summary Judgment is granted on Count One of Plaintiff's Complaint.

## IV.

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.

Dated: April 15, 2011

                                                  s/Joseph E. Irenas

                                              **JOSEPH E. IRENAS, S.U.S.D.J.**